Please call our next case. Case number 24-1303 and case number 24-1311, both from the District of South Dakota, United States v. Jeremy Young. Thank you. All right, good morning, counsel. Good morning. Ms. Stain helped, you may proceed when you're ready. May it please the court. My name is Rachel Steinholt, and I represent Jeremy Young. We are asking this court to reverse Young's convictions in two separate cases, his gun case and his assault on a federal officer case. I want to begin with the gun case, and specifically I want to start with the Batson challenge. The government exercised three of its first four peremptory challenges against Native Americans, jurors 2, 6, and 17. The court overruled these challenges, but noted that the strike against juror 17 was a particularly close call, and that one more strike against a Native American would make the court, quote, really skeptical, close quote. Addressing juror 17, the government offered two invalid bases from which to strike juror 17, only one of which the court seemed to credit. The government identified juror 17's body language as being unfavorable during questions about possession, but the record does not support that the court credited this basis. Neither the district court nor Young observed the body language that the government asserted, and when overruling the Batson challenge, rather than crediting the government's assertions or the government's integrity generally, the court did the opposite. It expressed its skepticism about the government's peremptory challenges. So this basis was invalid and not credited by the court. That's an interesting one, because the district court did say, well, you're relying on body language. I didn't see it, but you, government counsel, are closer to the person, and then kind of went on. It's like a half finding. What do we do with that? Do we need to say there was no finding, or how would you characterize that? I would characterize that as no finding. It was just an observation that you're closer. Because I think we find from the court's ruling, when it did speak, we see the skepticism that it has, and it also spent more time just asking about that second basis. I'm assuming you have much more experience with this than I've even seen in the cases, but when counsel says, well, I'm sensing body language, no eye contact, what kind of findings are district courts making on that? Because it seems to me that it would be difficult for a district court to say, okay, I saw that they weren't making eye contact with you. I think that would be a hard thing to actually find, but I suppose they could say, well, I find you're being truthful, or I credit your assessment of that. How does it normally play out in those kinds of situations? Cited in the brief, I forget the name as I stand here, but there is a case where the 8th Circuit said that very thing that the court said. The district court did say, I didn't see it, but I know counsel, and their integrity is something that persuades me that this is a valid basis. So is that the kind of finding we should expect then when we see a record? That is, especially in demeanor and body language type bases. These are particularly identified by these bats and challenges as something that can be particularly a basis that is race-based or covertly race-based. And I suppose it would be helpful if defense said, no, Your Honor, I didn't, for the record, I didn't see it. I've been watching that back and forth. Yeah, and we have that here. We actually have that here where defense counsel does say, both defense counsel and district court says, we just didn't see this. So we really feel that the district court relied on that second basis, which is that the jurors, juror number 17's sister had drug charges. But here the government did not strike an impanel juror that had a son with drug charges. And we agree with the government that plain error review applies to the similarly situated juror argument. What do we do with that, though? I mean, okay, so in Hill, Judge Grunder says plain error review. And then in our prior cases before that, we say, hey, it's waived. If you don't make that precise argument, and I think that's an opinion by Judge Loken. There's maybe even an earlier opinion. What do we do with the fact that the earlier opinions say it's waived? We follow Hill, and Hill's left it as an open question, which is the most recent case that was 2022. And the government asserted that plain error review applies. We agree with their assertion. They did not raise that Young had waived this issue at all. So if the court would like further briefing on just the standard of review generally, we could provide that. I wonder if there's a way to reconcile them, at least how Hill came out. We were supposed to follow the first in time rule. So I don't know that your suggestion works, because that would require us to go to the older cases. But I wonder if when Hill says, we're going to do this on the fairness, integrity, and reputation of judicial proceedings, whether that's almost analogous to a waiver, which is to say that I think that Hill is recognizing, and this doesn't help you necessarily, but it would be a rare, rare, rare case where we would reverse. So I wonder if there's a way to somehow reconcile the two lines of cases around that fourth prong of plain error review. At least it would recognize that in some instances, in a really egregious case. And, for example, let's suppose that 12 Native American jurors were struck all in a row by the same party, and a bunch of similarly situated white jurors were not struck. It would preserve the option of reversing in that sort of outrageous instance. Well, first, to that point, we would submit that eliminating one juror for a race-based reason is outrageous. We only, one juror can sway the whole trial. Well, not unless there's a race-based reason for it, right? You can eliminate a Native American juror. Absolutely. I'm just trying to figure out if there's a way to sort of reconcile them and still leave open sort of the outrageous case. Well, we feel that we do have that case here. I think to the prong for analysis in Hill, there's this concern about sandbagging, which could be a concern, and that's that case line before Hill which says, we're not even going to review this at all. This is a great case of where sandbagging is not present because all the jurors answered this juror questionnaire, and we have that as part of the record. So here is just a, this isn't a case of sandbagging, and so those concerns are assuaged here. To the merits of the similarly situated argument as applied to Juror 17, so we meet all four prongs of plain error review. Prongs one and two are met because when you strike a juror based on a characteristic shared by an impaneled juror, that is an error that is plain. For both jurors, all we know is that they both share a family member that has drug charges. The impaneled juror had an immediate family member that had drug charges, that was her son, whereas the dismissed juror, it was his sister that was dismissed. So arguably, the impaneled juror has even more of a connection, which makes it worse. Let me ask you this, though, and this is where I'm getting at the outrageous point. If you had, and I want to test this, which is even if you had similarly situated jurors, it doesn't show a race-based reason. You might have one challenge left, and you've got a white juror and you've got a Native American juror, both of whom have the exact same attributes, and you've got to make a call. You've got to make a call between the two of them, and suppose that for some reason I didn't like the way the Native American juror looked at me during my question or something like that. That doesn't necessarily say that it's a race-based reason. It can be circumstantial evidence of it. Do we have more than that here, or is it just simply you didn't strike that one? We do have more here. Actually, to that point, what we know is that the government pulled for Juror 17, they pulled this information directly and exclusively from the jury questionnaire, and it shows that the government scoured the jury questionnaires for this prior conviction question specifically. And we know Juror 17 has that question answered in this way that triggered the government, as does this impaneled juror. And at the point that this challenge is made, they had only exercised three of its four peremptory challenges. The government had more peremptory challenges. We're not in a situation where there's only one peremptory challenge left. And they identified that this basis was egregious enough that Juror 17 had to be eliminated within the first three of its four, first four peremptory challenges. This is pretext. It could have eliminated the impaneled juror. It had the option to do so. It didn't. And again, we know that it was scouring the jury questionnaire for this basis. And we know that because, again, the court asked them, hey, okay, well, what jurisdiction was this juror's charges? They didn't know that. They didn't know what type. They didn't even know if it was federal, state. They didn't know if the charges turned into convictions. And so, to your hypothetical, we have a stronger case here. As to prongs three and four of plain error review, normally in a Batson challenge, when prongs one and two are met, then prongs three and four naturally follow. But here, prongs three and four are met because eliminating a juror for a race-based reason violates Young's equal protection rights, as well as the fairness, integrity, and public reputation of proceedings. And then what do you do about Hill? That fourth prong, Hill seems to say that that fourth prong isn't satisfied there. What's different about this case? Well, again, that gets to the whole sandbagging question. And we really feel like on the facts of this case in particular, this court has everything it would need. You know, juror 17, to the record, what the government stated in the Batson challenge is that it basically exclusively relied on just this jury questionnaire. The court has those. Yeah. Unless the court has questions, I will reserve the remainder of my time for rebuttal. Very well. Thanks. Mr. Murphy, you may proceed. Thank you, Your Honor. Good morning, Your Honors, Counsel. May it please the Court, my name is Brian Murphy. I represent the United States. I also have the opportunity to be trial counsel for both of Mr. Young's trials. The arguments that my colleague here makes are unavailing. They are attempting to sandbag after the fact by pointing to the record saying that the jury questionnaires were part of the district record at R Document 50, which they say in their brief. The points that they try to make were not argued in front of the district court. I would also submit that the district court made a complete analysis of the reasons that we proffered for striking the juror, and that even if this court were to engage in a similarly situated analysis, which it should not under Hill, even if we did, we would find that Juror 17 is in fact distinguished from the other juror that was not struck, and that juror is distinguished because of their body language, which we saw, we noted. And I would also submit that the court took both of our reasonings, one, the drug charges that we did note in the jury questionnaires, but also the body language of that juror. And then in making the challenge and us refuting the challenge, the district court analyzed not only myself and my demeanor, but my co-counsel, Ms. Megan Dilgis, and her demeanor. And on the record, when the district court did not agree with any of our reasons for striking a jury, juror or a potential juror, the district court made a record of that. On earlier strikes and challenges, we noted that there was problems with one juror who had a comment about mental health and firearms. I mentioned that to the district court. The district court said, I don't find that persuasive. Are there other reasons that we can get to this challenge? And that's a paraphrase, not a direct quote, Your Honors. And so the district court here is not required to say, for reason number one, reason number two, I'm going to uphold your reasoning. Well, why not? I mean, wouldn't it, it seems to me that it's important to know whether the district court found an assertion of body language being a problem, not looking me in the eye. If the district court didn't find that to be credible, it would have to find another legitimate reason for the strike. So how can it be that it doesn't matter which one the district court accepted? Because both are reasonable. Well, I think the argument is that there was no finding on the more subjective one, which is the body language. And so how do we assess that? I think the finding was that the court was skeptical, but it had accepted the challenge. And that's the way that the record should stand. So if there had not been the additional reason being the family member with the drug charge, would you be standing there saying there was a sufficient finding from the district court that the body language reason was sufficient? Yes. And why is that? Because body language has been upheld before as a reasoning for striking a juror. It was part of our trial strategy. And also the questions that were asked in number 17 about the firearms and the government's view on firearms were also asked to the juror. So if I can understand your position, the fact that the district court never expressly stated either, yes, I saw that too, or I didn't see it, but I take that as a legitimate reason, that's not necessary? It's necessary insofar as it's supportive of the district court's decision. But if the district court didn't find those reasons persuasive, the district court would have said so. Moving further, there's another set of jury persons that my colleague here makes the argument were similarly situated, and that would believe juror number six strike. Two jurors had mentioned in their jury questionnaires that they were involved at some level with court cases. That is the similarity that my colleague points out. The distinction is this. The juror that was ultimately struck had been part of a tribal council in Lower Brewer, was recognized both by Miss Dilges and the district court as having been part of that organization during the period of investigations by the United States Attorney's Office. The other person had simply been a witness for a friend in a court case. The distinction is that somebody who is subject to an investigation is also subject then to the possibility of criminal prosecution by this office, the United States Attorney's Office, that had done that investigation. There was no indication in the juror questionnaires that this person who had been a witness in an embezzlement case was ever subject to the same penalties or the same possibility of charging. The distinction is that the animus that has the possibility to build with somebody who is under investigation by a United States Attorney's Office is different than somebody who is simply just going to walk into court and be a witness. Are they both participating at some level in court interactions? They sure are, but the distinction is one person was only there to tell what they saw. The other person could have faced the same possibility of prosecution that the other tribal council members had faced, and for that reason, we struck them. Juror number two was struck because she had expressed the inability to bring judgment against a fellow citizen. To the United States, that said to us that we have a possibility of a mistrial, and on that basis, we wanted to have a fair and complete and total trial for Mr. Young, and that's why we struck that jury person or the veneer person in that case. Moving forward, Mr. Young makes a res justi argument that his admissions that were made in a post-Miranda interview the day after he was arrested should not have been submitted to the jury, should not have been admitted as evidence in his court trial. I would argue against that. Res justi evidence is evidence that is intrinsic, indicative, or gives context to a crime. Here, the possession of the firearm, the constructive possession of the firearm by Mr. Young is very much indicated by his preparations that had happened right before he was arrested. He picked up a, in this case, it was his co-defendant, but it was his friend in Parmalee, South Dakota, which is about 20 minutes west of Rosebud, South Dakota. They drove to Rosebud together. They prepared a vehicle to go on a drug run to Sioux Falls, and then right before they departed for that drug run, they had been followed by Rosebud Sioux Tribe law enforcement officers. They got nervous. They threw a gun out the window. They were pulled over. It all provides context for why that weapon was present in Mr. Young's vehicle. The court properly considered a motion limiting by defense, carved out some of that recording, and for a very limited purpose, which was res justi 404, and in its oral ruling on the day of trial said that the evidence also spoke to motive, intent, and knowledge, and for those reasons, that piece of the recording that was submitted as evidence in court and later went back to the jury was properly considered. As for the assault on a federal officer, that case was properly considered by the jury. Also, that evidence was properly considered. There was two theories set forth. The defense theory was that Mr. Young, in all of his actions after being tased, was involuntary in his contact with Sergeant Antwon, and for that reason, could not be convicted because he was not intentionally acting. And then two, the second theory was that Sergeant Antwon had tripped and fallen into Mr. Young as he was trying to surrender, and so the contact was incidental and not initiated by Mr. Young. That theory also did not hold up with the jury. The jury viewed the video evidence, which I would encourage the court to view, if you have not already, which we submitted with this case. It's very definitive. On that video, the jury saw that Mr. Young was running away from Sergeant Antwon, that he had stopped, he had turned, and he raised his hand, and he struck the officer. He did not intend to stop and surrender. He continued to flee, and he was not found for another hour until he was found across the highway hiding in trees. On the firearm in possession, the jury also found that after the evidence was properly submitted, that the theory that Mr. Young was going on a drug run supported the validity of that weapon being there, and for those reasons, the jury chose to convict him in both cases. I think that the court here should deny Mr. Young's appeal, should uphold the jury verdicts, and it should also uphold the district court in their rulings on the Batson challenges. Can I ask you about the rest just die, which is, I think there are two alternative bases, but I'm not sure they're actually alternative, to be honest with you. One alternative is the one you mentioned, which is the rest just die, which is it completes the story, but I wonder if it completes the story because it goes to his knowledge of whether there was a gun. I'm kind of trying to figure out, because they were going to pick up drugs, and so I'm wondering if they're one and the same, whether using Rule 404B here in terms of the knowledge requirement is the same as upholding that it's rest just die evidence. At least the rationale would be the same. I would agree that the rationale is the same, and I believe that's why it was argued as essentially one and the same by both sides here. It is essentially, as we look at it in a macro sense, Your Honor, very much the same and allowable under both. It completes the context of it, but it also gives it's a prior bad act, and then even further when we go to the district court's ruling that it speaks to motive and intent. It gives a reason why he would have that weapon with him. Well, and that gets to the overall point, which is I think it's much safer. You heard Judge Shepard ask this in an earlier case today. It's much safer to just go with the plain language sometimes. It's kind of the easier way to go, so why not go with knowledge? I've always found rest just die to be very slippery, and you can include a lot of stuff. You can make up your own stories to include other bad acts evidence. It's really hard to make up anything to get to knowledge. Agreed. I would submit that the stronger case here then is the motive intent knowledge piece of it, and that rest just die is somewhat subjective and speaks kind of to a wider door that you can sell to the jury. However, under either theory of operation here, Your Honor, it is a properly submitted piece of evidence, and it gives explanation for the presence of that firearm. That's fair. Thank you. You had called it prior bad act. Is that accurate? It's somewhat contemporaneous. Somewhat? Somewhat. There's two phases to this here, Your Honor. He had knowledge and possession of the firearm in the days prior to the preparation for the drug run and then on the day of the drug run. So was the jury, and I apologize, I did not look at the jury instruction on this, but were they instructed that the possession was only on the day of the arrest? No. I believe the jury instruction covered both, and that's the way that we had presented it. In our theory of operation, he could either have been convicted for checking it out in the days prior when Mr. Plumman had brought that weapon originally into the Rosebud area or on the day of his actual arrest during the preparation for that drug run. He also had constructive possession and knew of that weapon. So only on that theory? Is it a prior bad act? No. I would say they were all together, but the evidence still holds under any other of the evidence standards that we've discussed today, Your Honor. Did the court give an instruction to the jury describing the purposes for which the jury could consider, for example, the evidence about the intent to travel to Sioux Falls and receive the money for transporting? I believe so, Your Honor. If I recall correctly, before the recording was played, the district court, if I'm recalling correctly, offered a limiting instruction for what the purposes of the recording would be used for. On the waived versus plain air thing, that's slippery. I'm trying to figure out a way to reconcile the cases. The government, maybe I'm wrong, maybe opposing counsel is wrong, but the government seems to be arguing plain air here, not outright waiver. I just want to give you a chance to address that with regard to those two jurors where the similar situation wasn't brought up. I would say that because I said it in our brief, that plain air is proper. But if we step back a little bit further, the question has to then be asked, Your Honor, if the juror questionnaires are part of the record, why was that not part of the refutation during the Batson Challenge process? And I would submit to you that even though those were part of the record, the defense team had not properly utilized those and now is attempting to make those arguments. So I would say in that sense, it's a waiver for the purposes of the brief and what we've already agreed upon, plain air. And I would agree that there's the court stepped back a little bit in Hill and said, you could do this either way. And it still leaves the question open. How many, as the jury was finally composed, how many Native Americans eventually served? So we had six when we started the jury pool. We struck three. That would leave three, Your Honor. And I see my time is almost up. For the reasons discussed today and for the reasons in our brief, I would ask that the appeal be denied and the convictions be upheld. I yield my time. Thank you. Four minutes and 20 seconds. You may proceed. Resuming with your question about the jury pool, the final jury pool had two Native Americans and one multi-race, somebody who indicated that they were multi-race. And then one of those Native Americans ended up being an alternate. I do want to start back with the government asserting that the body language was credited. We would just reiterate that if you review the record, it does not indicate that the court gave any sort of indication that this body language assertion was supported. I do want to touch on, counsel touched on the res gesti issue. And to that, I think it's important both whether it was res gesti or whether it was 404B both. Can I ask you a question? In looking at the transcript, the court is talking about this juror and the state has given this additional reason about the body language. And the court says this juror is the closest call. He said, but there does remain three other Native American jurors whom the United States has not stricken. I would be really skeptical if they do strike one of those. Is that, was that even an appropriate consideration, do you think, for the court? Well, what I think it indicates, we actually think that that is a favorable sign to us. It is demonstrating that the court is recognizing a pattern here, that three of its first four perimetry challenges is against Native Americans. It, I think to your question, only one person, only one juror, whether there's, if the court, if they eliminated 12 people for being, for a race-based reason, or just one. We just have to prove just one pretextual reason for eliminating a juror. But I think the court's point is that they are noticing a pattern, which goes to the credibility part, because the court is already indicating skepticism here. Well, I thought what the judge was saying is that there's three left. If the government attempts to strike one of them, then we'll be skeptical and may have to revisit this. But that didn't happen. It didn't happen, but it was saying it was... in essence, recognizing there's no pattern here. I don't think so. I think we have that, the court said, I would be really skeptical if you eliminated one more juror. So I think what that indicates is that the court is already skeptical and is saying, this is a really close call. Juror 17 is a really close call. So we do have that language in there. And that's important, too, because the government had other preemptory strikes. We know they were scouring the jury questionnaires. To reiterate that point, we know they were scouring the jury questionnaires for that prior conviction question. Why not eliminate this other juror who arguably is in a more animist state, because their son had drug charges, rather than the juror that was eliminated was just his sister? So we think that the record really demonstrates that there is a pattern, both individually and as a pattern, that there is pretext going on here. And so we would ask the court to reverse for that reason. I see my time is running out. So unless the court has any specific questions for the reasons in our brief and for the reasons here today, we would ask this court to reverse Mr. Young's convictions. Thank you. Thank you, counsel. I appreciate your arguments today. The arguments have been very, very helpful. We thank you for that. The case is submitted. The court will render a decision in due course. I may stand aside.